NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SMITH v. SUPREMA SPECIALTIES, INC.

**OPINION**
Civ. No. 02-168 (WHW)

**Walls, Senior District Judge**

Teacher Retirement System of Louisiana ("TRSL") moves for class certification pursuant to Fed. R. Civ. P. 23(a) and 23(b)(c). Pursuant to Fed. R. Civ. P. 78, the motion is decided without oral arguments. The motion is granted.

**I. FACTS**

The present motion concerns the class action portion of a consolidated securities litigation, which consists of Smith v. Suprema Specialties, Inc., 02-168 (WHW), the class action, and Special Situations v. Cocchiola, 02-3099 (WHW), a non-class action brought by separate plaintiffs. The facts and procedural history of the consolidated action have been largely set forth in the Court's opinions of June 25, 2003 and August 31, 2004, and in the Court of Appeals' mandate of February 23, 2006, and so only a brief version is recounted here.

**A. Parties**

The proposed class representative TRSL is Louisiana's public school teacher pension

NOT FOR PUBLICATION

fund, with total assets of some $ 12.7 billion as of June 2005.  This action stems from TRSL's November 2001 purchase of 47,200 shares of Suprema Specialties, Inc. ("Suprema") common stock in a secondary stock offering, shortly before Suprema went bankrupt.

Suprema Specialties, Inc. ("Suprema") was a New York corporation that manufactured, processed, imported, and marketed cheese products.  It was founded in 1983 as a non-public corporation.  Suprema went public in 1991, and was listed on the NASDAQ exchange in 1993.  Its headquarters was in Paterson, New Jersey, and it had processing plants in Paterson; Manteca, California; Ogdensburg, New York; and Blackfoot, Idaho.  Suprema filed for bankruptcy protection in February 2002.

Defendant Mark Cocchiola helped found Suprema and acted as its Executive Vice-President, CEO, and Chairman of the Board of Directors.  Defendant Steven Venechanos was Suprema's CFO, Secretary, and a member of the Board of Directors.  This opinion will refer to Cocchiola and Venechanos as the "Suprema Officers."

Defendants Marco Cocchiola, Rudolph Acosta, Jr., Paul DeSocio, and Barry Rutcofsky were members of the Board of Directors.  Marco Cocchiola was also Suprema's Operations Manager.  Acosta, DeSocio, and Rutcofsky were members of the Board's Audit Committee.

Defendant BDO Seidman, LLP ("BDO') was Suprema's auditor in 2000 and 2001.  Defendants Janney Montgomery Scott, LLC, Pacific Growth Equities, Inc., and Roth Capital Partners, LLC (collectively the "2001 Underwriters") underwrote Suprema's 2001 secondary offering of 4.05 million shares of common stock.

**B. Background**

**NOT FOR PUBLICATION**

This action concerns alleged violations of securities law by the defendants. From 1999 to 2001 Suprema publicly reported spectacular growth in sales and receivables. It is alleged that Suprema's reported growth was the result of fraudulent schemes in which the company sold cheese products to fictitious buyers. The fictitious buyers ostensibly resold the products to fictitious suppliers, who then resold the products to Suprema. For the most part, no actual products changed hands; when it did, the cheese products were of a much lower grade than Suprema represented. The volume of fraudulent sales transactions led creditors to increase Suprema's line of credit, which in turn allowed Suprema to further enlarge the circular sale scheme. From late 1998 to late 2000, as the company's reported sales and revenues grew, Suprema's share price doubled. In September 2001, Fortune Magazine named Suprema the 23rd fastest growing small company in America.

From June 1999 to September 2001, Suprema increased its line of credit from $30.4 to $113.7 million. TRSL alleges Suprema was able to increase its borrowing by misrepresenting its accounts receivable and its inventory to creditors. In November 2001, Suprema sold 3,500,000 shares of common stock, for a total of $41.5 million, in a secondary offering of the company's common stock. The Suprema Officers, the other individual defendants, BDO, and the 2001 Underwriters all were allegedly involved in the secondary offering. The Suprema Officers sold approximately $3 million of their own shares, a sizeable percentage of their holdings, in the secondary offering.

On December 21, 2001, Suprema announced an internal investigation of its reported financial results. Shortly thereafter, the NASDAQ exchange suspended the trading of Suprema

**NOT FOR PUBLICATION**

shares. On January 25, 2002 Suprema announced that it had retained the outside accounting firm Deloitte & Touche, LLP to assist in its investigation. On February 24, 2002 Suprema filed for Chapter 11 bankruptcy protection; on March 20, 2002 the bankruptcy proceeding was converted to a Chapter 7 liquidation.

TRSL initially filed its initial class action complaint on January 14, 2002, at the same time as numerous other putative class actions. The Court consolidated the class actions, and appointed TSLR as the lead plaintiffff in the consolidated class action on July 1, 2002. After the appointment, TSLR filed an amended class complaint. On September 17, 2002, the class action was further consolidated for pre-trial proceedings with a non-class complaint filed in June of that year. On January 30, 2004, TSLR filed a second amended class complaint ("SACC"), which incorporated facts discovered through a related federal criminal investigation and prosecution of various participants in the scheme.[1]

The second amended complaint asserted that:

(1) all of the defendants had violated Section 11 of the Securities Act, 15 U.S.C. § 77k, which creates civil liabilities for losses associated with purchasing securities in reliance of false and misleading registration statements;

(2) the Suprema Officers and the 2001 Underwriters had violated Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l, which creates civil liabilities for losses associated with purchasing securities pursuant to false and misleading prospectuses and communications;

(3) the Suprema Officers and BDO had violated Section 10(b) of the Exchange Act, 15

---

[1] Four persons involved in the alleged scheme, George Vieira, John Van Sickell, Robert Quattrone, and Lawrence Fransen, pleaded guilty to criminal conspiracy and other charges in 2004. Mark Cocchiola and Steven Venechanos were later criminally tried in the District of New Jersey on 38 counts of conspiracy, bank fraud, false statements in SEC filings, wire fraud, and mail fraud. The jury returned a guilty verdict on all counts on April 2, 2007.

**NOT FOR PUBLICATION**

        U.S.C. § 78j(b), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, which prohibits manipulative or deceitful statements, acts, or devices in connection with the sale of securities;

(4) the Suprema Officers had violated Section 15 of the Securities Act, 15 U.S.C. § 77o; and

(5) the Suprema Officers had violated Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).[2]

On August 21, 2004 this Court dismissed all counts of TSLR's complaint.[3] On appeal, the Court's dismissal of TSLR's complaint was vacated in its entirety by the Third Circuit.[4] In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256, 268 (3d Cir. 2006).

      TRSL now moves before the Court to certify a plaintiff class consisting of:

all persons or entities who (i) acquired Suprema common stock in the 2001 Secondary Offering pursuant to the Registration Statement; or (ii) acquired Suprema common stock during the period from September 27, 2000, through December 21, 2001, inclusive (the "Class Period"), and who *suffered damages*[5] as a result of said acquisition. Excluded from the Class (the "Excluded Parties") are: (i) the defendants; (ii) members of the family of each individual defendant; (iii) the Estate of Paul Lauriero; (iv) any person who was an

---

[2]Section 15 creates "control person" liability for violations of, respectively, Section 11 and Section 12(a)(2). Section 20(a) creates "control person" liability for violations of Section 10(b).

[3]The Court dismissed the Section 11 and Section 12 (a)(2) claims under Fed. R. Civ. P. 9(b), for failure to plead with particularity claims sounding in fraud. It dismissed the Section 10(b) claim for failure to plead scienter, and dismissed the Section 15 and 18 claims because TSLR had not adequately pleaded underlying violations by the Suprema Officers.

[4]The Court also dismissed all of the counts of Special Situations v. Cocchiola, 02-3099, the related non-class action. The Court of Appeals vacated the Court's dismissal of some causes of action in that case, and affirmed others.

[5]The italicized language reflects a change in the class definition requested by TRSL in its reply brief. In the original motion, the definition read "and who sustained a loss as a result of said acquisition."

**NOT FOR PUBLICATION**

>officer or director of Suprema during the Class Period; (v) any person who is named as a defendant in any criminal proceeding brought by the U.S. Government relating to Suprema; (vi) any firm, trust, corporation, officer, or other entity in which any Excluded Party has a controlling interest; and (vii) the legal representatives, agents, affiliates, heirs, successors-in-interest, assigns, partners, officers, executives, directors, or controlling persons of any Excluded Party.

BDO and the 2001 Underwriters have filed oppositions to TRSL's motion for certification. No other defendants have opposed the motion.

## II. LEGAL STANDARD

A plaintiff seeking class certification bears the burden of proving that the action satisfies the four threshold requirements of Fed. R. Civ. P. 23(a) and also falls within one of the three categories of Rule 23(b). <u>Baby Neal v. Casey</u>, 43 F.3d 48, 55 (3d Cir.1994). Fed. R. Civ. P. 23(a) states the threshold requirements for all class actions. Under Rule 23(a), a class may be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

Rule 23(b) sets forth the three varieties of class actions contemplated by Fed. R. Civ. P. 23. Plaintiffs in this action invoke Rule 23(b)(3), which permits class certification when the court finds that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P.

NOT FOR PUBLICATION

23(b)(3). Rule 23 and modern class action practice in the federal courts have their roots in equity, Ortiz v. Fiberboard Corp., 527 U.S. 815, 832-33 (1999), and the Court must exercise its discretion in ruling on a motion to certify. In re Fine Paper Antitrust Litig., 685 F.2d 810, 822 (3d Cir. 1982), cert. denied sub nom., Alaska v. Boise Cascade, 459 U.S. 1156 (1983). In the Third Circuit and elsewhere, courts have recognized that class actions are often appropriate in the securities context. See Yang v. Odom, 392 F.3d 97, 109 (3d Cir. 2004); Eisenberg v. Gagnon, 766 F.2d 770, 785 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985); Kahan v. Rosenstiel, 424 F.2d 161, 168 (3d Cir. 1970); In re Lucent Techs., Inc. Sec. Litig., 307 F. Supp. 2d 633, 641 (D.N.J. 2004); Gunter v. Ridgewood Energy Corp., 164 F.R.D. 391, 400 (D.N.J. 1996); In re Vicuron Pharm, Inc. Sec. Litig., 233 F.R.D. 421, 425 (E.D. Pa. 2006). Because the interests of shareholders are often so dispersed, class actions are necessary to effectively implement the securities laws. Eisenberg, 766 F.2d at 785; Gulf Oil v. Bernard, 452 U.S. 89, 101 n.11 (1981). Accordingly, the Third Circuit endorses a liberal approach to class certification in securities actions: the "interests of justice require that in a doubtful case . . . any error . . . should be committed in favor of allowing a class action." Eisenberg, 766 F.2d at 785 (citation omitted).

A class certification decision requires a thorough examination of the factual and legal allegations. Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 166 (3d Cir. 2001) (citing Barnes v. Am. Tobacco Co., 161 F.3d 127, 140 (3d Cir.1998), cert. denied, 526 U.S. 1114 (1999)). For this purpose, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." Newton, 259 F.3d at 166 (quoting General Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 160 (1982); see also Amchem Prods.,

**NOT FOR PUBLICATION**

Inc. v. Windsor, 521 U.S. 591, 634-35 (1997) (Breyer, J., concurring in part and dissenting in part). "Before deciding whether to allow a case to proceed as a class action, ... [courts] should make whatever factual and legal inquiries are necessary under Rule 23." Newton, 259 F.3d at 166 (quoting Szabo v. Bridgeport Machs. Inc., 249 F.3d 672, 676 (7th Cir. 2001)). However, "[i]n determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). See 7AA Wright, Miller & Kane, Federal Practice and Procedure § 1785, p. 379-80 (2005)

**III. DISCUSSION**

    **A. Fed. R. Civ. P. 23(a) Requirements**

        **1. Rule 23(a)(1) - Numerosity**

"The numerosity requirement is intended to limit the class action device to those cases in which the number of parties makes traditional joinder of parties unworkable." In re Mercedes-Benz Antitrust Litig., 213 F.R.D. 180, 184 (D.N.J. 2003). "There is no magic number which satisfies the numerosity requirement, and plaintiffs do not have to allege the precise number or identity of the class members." In re Plastic Cutlery Antitrust Litig., No. 96-728, 1998 WL 135703, at *2 (E.D. Pa. Mar. 20, 1998) (citation omitted). The Third Circuit has held that a class consisting of more than forty people generally satisfies the numerosity prerequisite. See Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001); see also Eisenberg, 766 F.2d at 785-86 (allegation of 91 class members satisfies numerosity).

**NOT FOR PUBLICATION**

A court "may accept common sense assumptions" in finding that numerosity has been met." In re Plastic Cutlery, 1998 WL 135703, at *2 (citation omitted).  In a securities action, a court may infer that the numerosity requirement is met from allegations of the number of transactions during the relevant period, even if the number of class members is not precisely known.  See In re Corel Corp. Inc. Sec. Litig., 206 F.R.D. 533, 540 (E.D. Pa. 2002).

Plaintiffs produce evidence that from September 27, 2000 to December 21, 2001 the number of outstanding Suprema common stock shares increased by over 4 million.  The average trading volume for this period was almost 50,000 shares per day.  From this TRSL reasonably estimates that class members – acquirors of Suprema common stock during the class period – number "in the thousands."  (Hakala Decl. at ¶ 38.)  Defendants have not disputed TRSL's facts or conclusions, and the Court finds that the numerosity requirement is satisfied.

### 2. Rule 23(a)(2) - Commonality

Rule 23(a)(2) of the Federal Rules of Civil Procedure requires that there exist "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Neither the claims of all the class members, nor the facts surrounding those claims, need to be identical.  See Baby Neal, 43 F.3d at 56.  Indeed, "the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class."  Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001) (quoting In re Prudential Ins. Co. of Am. Sales Practices Litig., 148 F.3d 283, 310 (3d Cir. 1998).

Here, the defendants' alleged misrepresentations and omissions are central to the claims of all class members.  TRSL enumerates five specific questions of law and fact that will need to

**NOT FOR PUBLICATION**

be addressed at trial: (1) whether defendants' acts violated the securities laws; (2) whether documents released by defendants contained such material misrepresentations and omissions that they were misleading; (3) whether defendants acted with the requisite state of mind in making these representations and omissions; (4) whether these misrepresentations and omissions inflated the market price of Suprema stock; (5) whether, and what degree, the class members sustained damages.

Courts have found commonality based on similar common questions of law and fact in securities class actions. See Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 389 (D.N.J. 1998); Deutschman v. Beneficial Corp., 132 F.R.D. 359, 372 (D. Del. 1990). Defendants have not disputed that plaintiffs have satisfied the commonality requirement. The Court is persuaded that the claims of all the defendants almost certainly implicate at least the five questions cited, and that the commonality requirement is met.

### 3. Rule 23(a)(3) - Typicality

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class. . . ." Fed. R. Civ. P. 23(a)(3). "Typicality asks whether the named plaintiff claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." Baby Neal, 43 F.3d at 55. In evaluating typicality, the Court should consider whether "the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based." Eisenberg, 766 F.2d at 786 (citation omitted).

**NOT FOR PUBLICATION**

Typicality is usually satisfied where the class representatives claims arise "from the same event or practice or course of conduct" as the other class members. Jerry Enters. of Gloucester County, Inc. V. Allied Bev. Group, L.L.C., 178 F.R.D. 437, 442 (D.N.J. 1998). A finding of typicality will generally not be precluded even if there are "pronounced factual differences" between class members, so long as there is a strong similarity of legal theories. Baby Neal, 43 F.3d at 58 (citation omitted). See Weikel, 183 F.R.D. at 390.

Courts are generally skeptical of defenses to class certification based on conflicts between the proposed class members. "The mere fact that a representative plaintiff stands in a different factual posture is not sufficient to refuse certification...[t]he atypicality or conflict must be clear and must be such that the interests of the class are placed in significant jeopardy." Hedges Enters., Inc. v. Continental Group, Inc., 81 F.R.D. 461, 466 (E.D.Pa. 1979) (citation omitted). Courts have "generally declined to consider conflicts, particularly as they regard damages, sufficient to defeat class action status at the outset unless the conflict is apparent, imminent, and on an issue at the very heart of the suit." In re NASDAQ Market-Makers Antitrust Litig., 169 F.R.D. 493, 514 (S.D.N.Y. 1996). Such arguments are unavailing except in rare situation where a conflict is "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." Id. at 514-15.

TRSL maintains that the class members' claims arise from defendants' same misrepresentations and omissions as its own claims. Together, the misprepresentations and omissions at the heart of the Securities Act and Exchange Act claims represent a common course of conduct from which the damages to all class members flow. The 2001 Underwriters, and to

**NOT FOR PUBLICATION**

some extent BDO, refute TRSL's assertion that its claims and defenses are typical of the class with two arguments: (1) TRSL does not have standing and (2) certain class members will be unable to prove loss causation.[6]

### a. Standing

The 2001 Underwriters also maintain that TRSL is atypical of the class for the purposes of the Section 11 and Section 12(a)(2) claims because it does not have standing under the requirements of those two sections.

The 2001 Underwriters present no concrete rationale or evidence for their opinion that TRSL does not have standing, but merely state that they "expect that further discovery" will vindicate their belief. (2001 Underwriters Opp'n at 6.) TRSL has produced evidence that indicates that it purchased 47,200 shares of Suprema stock from one of the 2001 Underwriters, Janney Montgomery Scott, LLC, on November 8, 2001, which was the beginning of the offering period. TRSL purchased this stock at $12.75 per share, which was the listed price in the Offering. On this showing, the Court is convinced that TRSL most likely has standing as a "person purchasing" a security from a defendant pursuant to a allegedly false and misleading registration statement and prospectus. 15 U.S.C. § 77k; 15 U.S.C. § 77l(a)(2).

### b. Loss Causation

The 2001 Underwriters argue that the plaintiffs have not satisfied the requirement of

---

[6] The 2001 Underwriters also try to revive their argument, which this Court has already rejected, Smith v. Suprema Specialties, Inc., 206 F. Supp. 627 (D.N.J. 2002), that TRSL cannot act as lead plaintiff due to the Private Securities Litigation Reform Act restriction against professional plaintiffs filling that role. 15 U.S.C. § 78u-4(a)(3)(B)(vi). The 2001 Underwriters present no reason why the Court should revisit this issue now.

NOT FOR PUBLICATION

typicality because the proposed class includes members "who sold their Suprema shares before the key disclosure of the 'true facts' . . . on December 21, 2001." (2001 Underwriters Opp'n at 6.) According to the 2001 Underwriters, the inclusion of these members necessarily creates inter-class conflicts because they have failed to allege loss causation under Dura Pharm. v. Broudo, 544 U.S. 336 (2005), and so cannot recover damages. Dura requires that plaintiffs in a Section 10(b) securities fraud action must plead and prove the element of loss causation, i.e. a plaintiff must plead and prove that "defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss." 544 U.S. at 346.

### i. TRSL's Section 11 and Section 12(a)(2) claims

The 2001 Underwriter's loss causation argument is disposed of easily with respect to TRSL's Section 11 and Section 12(a)(2) claims. Loss causation is a statutory affirmative defense for Section 11 and Section 12(a)(2) claims, and so is not an element of a prima facie case. 15 U.S.C. § 77k(e); 15 U.S.C. § 77l(b); In re Merck & Co., Inc. Sec. Litig., 432 F.3d 261, 274 (3d Cir. 2005); In re Adams Golf, Inc. Sec. Litig., 381 F.3d 267, 277 (3d Cir. 2004); Tracinda Corp. v. DaimlerChrysler AG, 197 F. Supp. 2d 42, 66 (D. Del. 2002).

Hypothesizing whether the defendants would be able to assert loss causation as an affirmative defense against plaintiffs who sold their shares before December 21, 2001 would require the Court to delve deeply into the merits of the case. Because courts avoid extensive inquiries into the merits on motions for class certification, see Eisen, 417 U.S. at 177, they will refrain from addressing loss causation affirmative defenses when certifying classes. See In re Deutsche Telekom Ag Sec. Litig., 229 F. Supp. 2d 277, 284 (S.D.N.Y. 2002) (denying request to

NOT FOR PUBLICATION

create subclasses based on potential ability of defendants to prove lack of loss causation); Freeland v. Iridium World Commc'ns, Ltd., 233 F.R.D. 40, 47 (D.D.C. 2006) (granting motion for certification in Section 11 and 12 securities litigation even though class representative unable to show loss causation). Though a quick peek into the merits may be justified when class certification is entwined with the merits of the case, see Newton, 259 F.3d at 166 (3d Cir. 2001), the Court will not speculate whether the members of the proposed class who sold their shares before December 21, 2001 might be unable to refute a hypothetical affirmative defense.

### ii. TRSL's Section 10(b) claims

However, under Dura, loss causation is an element of a Section 10(b) prima facie case. The 2001 Underwriters argue that proposed class members who sold their shares before December 21, 2001 cannot state a valid claim because they will be unable to meet their burden on loss causation at trial. Therefore, the 2001 Underwriters maintain, TRSL is not typical of the class as it has been formulated.

The 2001 Underwriters' argument assumes that the defendants' fraud or negligence only caused economic loss to plaintiffs who owned shares when news of the internal investigation was made public on December 21, 2001. This revelation led to Suprema shares devaluing as the artificial price inflation caused by defendants' fraud dissipated, until the market price of the shares reflected their actual value.[7] The plaintiffs' alleged economic loss resulted from holding or selling shares whose artificial price inflation had dissapeared. See Semerenko v. Cendant

---

[7]Or, as here, until the shares apparently became worthless upon Suprema's delisting and bankruptcy.

NOT FOR PUBLICATION

Corp., 223 F.3d 165, 185 (3d Cir. 2000) (discussing relation of artificial inflation to economic loss in context of loss causation); Green v. Occidental Petroleum Corp., 541 F.2d 1335, 1345 (9th Cir. 1976) (decrease in difference between inflated share price and actual value is measure of damages).

However, it is not always necessary that plaintiffs held their shares until a final disclosure event to prove loss causation. See In re BearingPoint, Inc. Sec. Litig., 232 F.R.D. 534, 543-44 (E.D. Va. 2006) ("in-and-out traders" may potentially prove loss causation). TRSL's complaint includes other events that could have decreased the amount of artificial inflation--and so may have caused some shareholders loss--before December 21, 2001. For instance, certain defendants sold large numbers of their own shares in the secondary offering, (SACC ¶ 70), and increased the indebtedness of Suprema on numerous occasions to fund their scheme. (SACC ¶ 18.) It is impossible for the Court to rule out the possibility that such actions caused the market to eliminate some alleged price inflation. Prospective class members who sold their shares within the class period may well have a harder time establishing loss causation, but it cannot be foreclosed before further discovery.

There may ultimately emerge some variation in the various claims and defenses of class members, but these differences do not suggest that TRSL's incentives will be misaligned with those of the class. Inter-class conflict is unlikely to result. TRSL's claim and defenses are typical of the proposed class, and Rule 23(a)(3) is satisfied..

### 4. Rule 23(a)(4) - Adequacy of Representation

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect

**NOT FOR PUBLICATION**

the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement seeks first to "test[] the qualifications of the counsel to represent the class." In re Prudential, 148 F.3d at 312 (citations omitted). Second, the requirement seeks to "uncover conflicts of interest between named parties and the class they seek to represent." Id. (citations omitted). Plaintiffs state that the plaintiff class is adequately represented by experienced counsel capable of prosecuting this securities litigation, and plaintiffs' counsel has vigorously prosecuted the case to date. As described above, plaintiffs maintain that there are no conflicts between the proposed class representatives and class members with respect to this litigation.

The 2001 Underwriters do not contest the qualifications of plaintiffs' counsel, but they do argue that interclass conflict will prevent TRSL from adequately representing the class. As in the context of typicality, they maintain there there is potential inter-class conflict between class members who sold their shares before December 21, 2001 and those who did not.

For the same reasons set forth in its discussions of typicality, the Court does not believe there now exists any apparent or imminent conflict between class members because class members who sold their shares before December 21, 2006 may be able to prove loss causation. Plaintiffs have satisfied the Rule 23(a)(4) adequacy of representation requirement. All the requirements of Rule 23(a) for class certification have been satisfied.

**B. Fed. R. Civ. P. 23(b)(3) Requirements**

The second part of the test for class certification requires this Court to determine whether "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," and whether "a class action is superior to other available

**NOT FOR PUBLICATION**

methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

### 1. Predominance of Common Issues of Law and Fact?

The predominance inquiry of Rule 23(b)(3) "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  "Predominance requires that the common issues be both numerically and qualitatively substantial in relation to the issues peculiar to individual class members."  In re Mercedes-Benz , 213 F.R.D. at 186.  "The mere existence of individual issues will not of itself defeat class certification."  Id. (citing Weisfeld v.Sun Chem. Corp., 210 F.R.D. 136, 141 (D.N.J. 2002)).

The focus of the predominance inquiry is on liability, not damages.  See Weikel v. Tower Semiconductor Ltd., 183 F.R.D. 377, 399 (D.N.J. 1998) ("While damages for each class member may prove to be different, this fact alone should not preclude class certification when common issues concerning liability predominate"); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 456 (3d Cir. 1977) ("it has been commonly recognized that the necessity for calculation of damages on an individual basis should not preclude class determination when the common issues which determine liability predominate"); In re Cephalon Sec. Litig., No. 96-0633, 1998 WL 470160, *4 (E.D. Pa.) (E.D.Pa. Aug. 12, 1998).

Here, as in many cases alleging an ongoing securities fraud scheme, there exist common questions of fact as to the participation of the various defendants.   All member of the proposed class will seek a determination that the defendants misrepresented and omitted disclosing material facts, that these misrepresentations and omissions caused the artificial inflation of

NOT FOR PUBLICATION

Suprema's stock, and that these alleged misrepresentations and omissions violated federal securities laws. When trying its case TRSL will "will rely upon proof of facts and legal theories common to all members of the class." Weikel, 183 F.R.D. at 400 (D.N.J. 1998). To be sure, the various members of the proposed plaintiff class could present divergent individual issues of damages, loss causation, or reliance. But divergence on these issues in not an impediment to class certification so long as predominance exists as to liability. See In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d 283, 315 (3d Cir. 1998) ("In particular, the 'presence of individual questions as to the reliance of each investor does not mean that the common questions of law and fact do not predominate.'") (quoting Eisenberg, 766 F.2d at 786); In re Cephalon Sec. Litig., 1998 WL 470160, at *4. See also Lerch v. Citizens First Bancorp, Inc., 144 F.R.D. 247, 252 (D.N.J. 1992) ("to allow various secondary issues of the plaintiff's claim to destroy the institution of a class action would render the rule an impotent tool for private enforcement of the federal securities laws").[8] The Court finds that the predominance requirement has been satisfied.

### 2. Is a class action superior to alternative methods of adjudication?

The second part of Rule 23(b)(3) requires the plaintiffs to demonstrate that "a class action

---

[8] In addition TRSL notes that reliance is not an element of the Section 11 and Section 12(a)(2) claims, In re MobileMedia Sec, Litig., 28 F.Supp.2d 901, 924 (D.N.J. 1998) and that class members would be entitled to a presumption of reliance in their Section 10(b) claim pursuant to a fraud on the market theory. Pinker v. Roche Holdings Ltd., 292 F.3d 361, 373 (3d Cir. 2002) (under fraud on market theory, plaintiff entitled to presumption of reliance if he bought securities "in an efficient market, [wherein] the price of the security is assumed to have incorporated the alleged misrepresentations").

**NOT FOR PUBLICATION**

is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). When conducting the superiority analysis, a court must consider the following factors:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3). Courts should be mindful, too, that litigation of related claims in one forum is generally preferable. See In re Ford Motor Co. Ignition Switch Prods. Liab. Litig., 174 F.R.D. 332, 351 (D.N.J. 1997). As mentioned, class actions are favored in the securities litigation context because they are necessary to meaningfully enforce the securities laws. See Eisenberg, 766 F.2d at 785; Gunter, 164 F.R.D. at 400.

The class action is the superior method for adjudication of the plaintiff class members' claims here. The factors listed in Rule 23(b)(3) clearly favor certification. First, there is no indication that any party would favor prosecuting this action independently, and the dispersed nature of shareholder interests would likely preclude litigating this action outside a class action. Second, the Court is not aware of any other, separate litigation concerning this controversy commenced by or against a member of the class. Third, concentrating these claims in one forum will avoid inconsistent verdicts and promote fairness and efficiency. Last, the Court perceives no insurmountable difficulties that will be encountered in managing the class action. Having weighed the 23(b)(3) factors, the Court finds that a class action is the superior method to adjudicate this dispute.

**NOT FOR PUBLICATION**

**IV. CONCLUSION**

For the foregoing reasons, the Court finds that plaintiffs have met their burden of satisfying the requirements of Fed.R.Civ.P. 23(a) and 23(b)(3) for class certification. TRSL motion to certify the proposed plaintiffs' class is granted.

It is on this 23rd day of April, 2007,

ORDERED that lead plaintiff TRSL's motion for class certification be GRANTED.

**s/ William H. Walls**
United States Senior District Judge