NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| IN RE SUPREMA SPECIALTIES, INC., SECURITIES LITIGATION | : | Civil Action No. 02-168 (WHW) |
|  |  |  |
| SPECIAL SITUATIONS FUND, III, L.P., et al., <br> Plaintiffs, <br> v. <br> MARK COCCHIOLA, et al., <br> Defendants. | : | Civil Action No. 02-3099 (WHW) <br><br> **OPINION** |
|  |  |  |
| MARK COCCHIOLA, et al., <br> Third-Party Plaintiffs, <br> v. <br> ROBERT A. GAIDA, et al., <br> Third-Party Defendants. | : |  |

**Walls, Senior District Judge**

Third-Party Defendants Robert Quattrone, Battaglia & Company, Inc. ("Battaglia"), and Packing Products, Inc. ("Packing Products") (collectively, the "Quattrone Defendants"), Cross-Claim Defendant BDO Seidman, LLP ("BDO") and Third-Party Defendants Robert A. Gaida, John L. Tucci, Jennifer L. Peruffo, and Donna J. Barone (collectively, with BDO, the "BDO Defendants"), and Third-Party Defendants George Vieira and Mary Vieira (collectively, the "Vieiras") move to dismiss Third-Party Plaintiffs Mark Cocchiola and Marco Cocchiola's[1]

---

[1] Marco Cocchiola has died since filing the Third-Party Complaints.

NOT FOR PUBLICATION

(collectively, the "Cocchiolas") Third-Party Complaints under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Pursuant to Fed. R. Civ. P. 78, the Court decides these motions without oral argument. The motions to dismiss are granted. The first, seventh, and eighth causes of action are dismissed with prejudice; the second, fourth, fifth, and sixth causes of action are dismissed without prejudice.

## FACTS AND PROCEDURAL BACKGROUND

These third-party actions arise in connection with the consolidated securities class action In re Suprema Specialities, Inc. Securities Litigation, No. 02-168 (WHW) and the non-class action Special Situations Fund, III, L.P. v. Cocchiola, No. 02-3099 (WHW). Lead Plaintiff in In re Suprema Specialties and Plaintiffs in Special Situations Fund allege that the fraudulent actions of Defendants-Third-Party Plaintiffs Mark and Marco Cocchiola, among others, resulted in the collapse of Suprema Specialties, Inc. ("Suprema"), formerly a manufacturer and marketer of cheese.[2]

The Cocchiolas filed Third-Party Complaints (the "TPCs")[3] in In re Suprema Specialties and Special Situations Fund on October 27, 2006.[4] They bring claims against a number of

---

[2] The facts and procedural background of In re Suprema Specialties and Special Situations Fund have been set out in the Court's opinions of August 3, 2007, April 23, 2007, August 26, 2004, and June 25, 2003, as well as in the Third Circuit's mandate of February 23, 2006. See In re Suprema Specialties, Inc. Sec. Litig., 438 F.3d 256 (3d Cir. 2006); Special Situations Fund, III, L.P. v. Cocchiola, No. 02-3099, 2007 WL 2261557 (D.N.J. Aug. 3, 2007); Smith v. Suprema Specialties, Inc., No. 02-168, 2007 WL 1217980 (D.N.J. Apr. 23, 2007); In re Suprema Specialties, Inc. Sec. Litig., 334 F. Supp. 2d 637 (D.N.J. 2004); In re Suprema Specialties, Inc. Sec. Litig., Nos. 02-168 & 02-3099 (D.N.J. June 25, 2003).

[3] Because the Third-Party Complaints filed in In re Suprema Specialties and Special Situations Fund are identical, the Court will hereinafter refer to them collectively as the "TPCs."

[4] An Order was entered by Magistrate Judge Ronald J. Hedges on October 6, 2006, stating that "any defendant wishing to assert a cross claim or third party claim may file same

NOT FOR PUBLICATION

parties, individually or collectively, for fraud, failure to conduct duties in accordance with accepted professional standards, negligent performance of professional services, violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as codified in 18 U.S.C. § 1962, et seq., predatory and unfair lending practices, indemnification, and contribution.[5]  On January 19, 2007, the BDO Defendants and the Quattrone Defendants filed their motions to dismiss, and on February 22, 2007, the Vieiras filed their motion to dismiss.

### 1. The BDO Defendants

According to the Cocchiolas, BDO is "a national professional services firm providing assurance, tax, financial advisory and consulting services to private and publicly traded businesses," including for Suprema during the relevant time period.  (TPCs ¶ 5.)  The Cocchiolas allege that Robert A. Gaida, John L. Tucci, Jennifer L. Peruffo, and Donna J. Barone are certified public accountants, who were employed by BDO and worked on Suprema's financial statements. (Id. ¶¶ 7-10.)  They claim that Gaida, Tucci, Peruffo, and Barone were "acting for [themselves] and as agent[s] for BDO when [they] committed the improper acts or omissions described" in the TPCs.  (Id. ¶ 11.)

The Cocchiolas state that BDO performed year-end audits on Suprema's financial statements from 1995 through 2001 and quarterly reviews from 1999 through 2001.  (Id. ¶ 42.) They claim that the BDO Defendants held themselves out to be "independent" to Suprema, as well as to its employees, investors, and creditors.  (Id. ¶ 60.)  The Cocchiolas assert that Suprema

---

within 14 days of this order." (Order (Nos. 230 (02-168) & 180 (02-3099)).)  Magistrate Judge Hedges later extended this deadline with respect to the Cocchiolas until October 27, 2006. (Order (No. 234 (02-168)).)

[5] On August 29, 2007, the Cocchiolas voluntarily dismissed their RICO claims without prejudice.  (Stipulation (Nos. 314 (02-168) & 257 (02-3099)).)

NOT FOR PUBLICATION

relied upon BDO's audits and reviews when publicly issuing common stock and providing various borrower base certificates to Fleet National Bank, its principal lender. (Id. ¶¶ 43, 76.)

The Cocchiolas maintain that the BDO Defendants falsely issued audit reports stating that its audits of Suprema complied with Generally Accepted Auditing Standards ("GAAS") and that Suprema's "financial statements presented fairly, in all material respects, the information set forth in conformity with" Generally Accepted Accounting Principles. (Id. ¶¶ 75, 78.) Specifically, the Cocchiolas suggest that the BDO Defendants' deficient audit procedures failed to uncover inflated and unreasonable values of Suprema's receivables and inventory. (Id. ¶ 78.) As example, the Cocchiolas point to the fact that in its review of Suprema's accounts receivable ledger, BDO failed to ask "obvious questions" and did not directly question the individuals who managed the accounts receivable and accounts payable departments. (Id. ¶¶ 57-58.) The Cocchiolas charge that had the BDO Defendants employed proper audit procedures, they would have concluded that Suprema was engaging in improper "round-tripping transactions."[6] (Id. ¶ 78.) As a result of the BDO Defendants' actions, the Cocchiolas claim that Suprema improperly received unqualified audit opinions, and the BDO Defendants violated GAAS, specifically American Institute of Certified Public Accountants ("AICPA") Third General Standard, AICPA First Standard of Field Work, AICPA Third Standard of Field Work, and Statement on Auditing Standards Nos. 1, 19, 47, and 53. (Id. ¶¶ 78-79.)

---

[6] According to the Cocchiolas, "round-tripping transactions" are fraudulent schemes whereby, in this case, Suprema's accounting entries reflected a sale of cheese by Suprema to a customer, with an accompanying purchase of cheese by Suprema from a vendor related to the customer. (Id. ¶ 50.) The Cocchiolas claim that these transactions were intended to inflate falsely Suprema's sales and, thereby, to increase the amount of bank credit available to Suprema. (Id.)

NOT FOR PUBLICATION

According to the Cocchiolas, the BDO Defendants' actions were the result of intentional wrongdoing, not just negligence. (Id. ¶ 80.) They note the BDO Defendants' knowledge of the round-tripping transactions, alleging that the BDO Defendants "affirmatively cover[ed] up the evidence of this scheme within . . . Suprema's financial records." (Id. ¶¶ 80-81.) As example, the Cocchiolas reference BDO's sign-off on Agreed Upon Procedures performed on Suprema's seven largest accounts, despite its purported knowledge of missing checks from West Coast Commodities, Inc. ("WCC") and Tricon Commodities ("Tricon") totaling approximately $4 million and $17 million, respectively. (Id. ¶ 82.) In addition, the Cocchiolas assert that BDO sent audit confirmations to Suprema's seven largest accounts and that BDO represented that all audit confirmations were returned without dispute, despite Tricon's refusal to sign the audit confirmation as a result of its disagreement with BDO's conclusion that it owed Suprema approximately $17 million. (Id. ¶¶ 83, 90.) Further, the Cocchiolas state that Tucci and others knew about the dispute with Tricon, yet prepared borrower base certificates and submitted them to Suprema's banks and Mark Cocchiola in November and December 2001, without disclosing that information. (Id. ¶ 84.) According to the Cocchiolas, Tucci confessed that the BDO Defendants actually did not have the telephone numbers or addresses of many of the accounts to which they were sending audit confirmations. (Id. ¶ 90.)

The Cocchiolas also state that after the December 19, 2001 resignations of Suprema Chief Financial Officer Steven Venechanos and controller Arthur Christensen, Mark Cocchiola requested that BDO audit Suprema's financials, particularly accounts overseen by Venechanos and Christensen. (Id. ¶¶ 44-45.) The Cocchiolas claim that Gaida initially assured Suprema that BDO could "'audit [its] own work,'" but that Gaida later changed his mind, claiming that an

**NOT FOR PUBLICATION**

independent firm was needed for the audit. (Id. ¶ 45.) According to the Cocchiolas, during the audit period that followed the resignations, BDO "'cleanse[d]'" Suprema's financials. (Id. ¶¶ 45, 85.) The Cocchiolas present as examples of cleansing activities: (1) that Tucci requested to see e-mails from Venechanos's computer; (2) that the BDO Defendants took a disc containing "soft copies" of false invoices left behind by Christensen following his resignation, that Barone was seen viewing these "soft copies," and that the disc later disappeared; (3) that the BDO Defendants took the hard drives from Venechanos's and Christensen's computers; and (4) that Peruffo was assisting in the audit, despite that Mark Cocchiola had previously requested her removal from the Suprema audit team due to a potential conflict of interest. (Id. ¶¶ 85, 88-89.) The Cocchiolas assert that "after reviewing what could only be construed as clear evidence of a fraud," Gaida told Mark Cocchiola that there were no issues with Suprema's financials and again that all audit confirmations had been returned to BDO without dispute. (Id. ¶ 90.)

        2.      **The Vieiras and the Quattrone Defendants**

The Cocchiolas state that George Vieira served as Chief Operations Officer of Suprema's California subsidiary from October or November 2001 until March 2002. (Id. ¶ 17.) In addition, the Cocchiolas assert that George Vieira owned and/or operated California Milk Market, Inc. ("CMM") and WCC from 1998 through March 2002. (Id.) They also say that Robert Quattrone owns and operates Villa D'Este and is the president of Battaglia and Packing Products, corporations that import and sell cheese. (Id. ¶¶ 23-25.)

The Cocchiolas allege that George Vieira and Quattrone, among others, pled guilty to charges of conspiracy to commit securities fraud, bank fraud, and wire fraud on January 7, 2007. (Id. ¶ 48.) In their plea agreements, George Vieira and Quattrone state that "[b]etween

NOT FOR PUBLICATION

approximately 1998 and January 2002, Suprema's sales to WCC were overstated by approximately $34 million and sales to CMM were overstated by at least $1 million" and that "[b]etween approximately 1994 and January 2002, Suprema's sales to Battaglia were overstated by approximately $130 million."  (Id.)  The Cocchiolas note that a complaint was filed on January 4, 2007, against George Vieira and Quattrone, among others, by the Securities and Exchange Commission (the "SEC"), alleging that Suprema and certain of its customers engaged in round-tripping transactions.  (Id. ¶¶ 49-50.)  The SEC's complaint claims that round-tripping transactions among Suprema, Battaglia, and Packing Products generated approximately $108 million in false sales and among Suprema, WCC, and CMM generated approximately $34 million in false sales.  (Id. ¶¶ 51-52.)  The Cocchiolas also mention the action Lopes v. Vieira, filed in the Eastern District of California, which alleges illegal acts of the Vieiras and the Quattrone Defendants in connection with their dealings with Suprema.  (Id. ¶¶ 86-87.)

## LEGAL STANDARD

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a court is required to accept as true all allegations in the complaint and draw all reasonable inferences in the light most favorable to the non-moving party.  Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (3d Cir. 2001) (citation omitted).  The question is whether the claimant can prove any set of facts consistent with his allegations that will entitle him to relief, not whether that person will ultimately prevail.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citation omitted).

Although a court will accept well-pled allegations as true for the purposes of the motion, it will not accept unsupported conclusions, unwarranted inferences, or sweeping legal

NOT FOR PUBLICATION

conclusions cast in the form of factual allegation. See Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (quoting City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)). Moreover, the claimant must "'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (quoting 5A Charles A Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (2d ed. 1990)). The Court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. See Sentinel Trust Co. v. Universal Bonding Ins. Co., 316 F.3d 213, 216 (3d Cir. 2003); see also 5A Wright & Miller, Federal Practice & Procedure § 1357.

"[A] 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" Mele v. Fed. Reserve Bank of N.Y., 359 F.3d 251, 256 n.5 (3d Cir. 2004) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quotation omitted)). "Plaintiffs cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." In re Burlington Coat Factory, 114 F.3d at 1426.

## DISCUSSION

### 1. Contribution and Indemnification Claims

Pursuant to the Judgment entered in In re Suprema Specialties on April 28, 2008, the Court ordered that the Cocchiolas are:

> [P]ermanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any claim against any other person or entity arising under federal, state, or foreign statutory or common-law rule, however styled, whether for indemnification or contribution or otherwise denominated . . . where the claim is a

NOT FOR PUBLICATION

>Released Claim and the alleged injury to [the Cocchiolas] arises from [their] alleged liability to the Class or any Class Member.

(Judgment (No. 353 (02-168)) ¶ 12.) The Special Situations Fund Plaintiffs have agreed to dismiss their claims against the Cocchiolas, mooting the Cocchiolas' contribution and indemnification cross claims and third-party claims in that action. (Letter (No. (02-3099)).) Accordingly, the Court dismisses with prejudice the first cause of action, as asserted against the BDO Defendants, and the seventh and eighth causes of action, as asserted against the Vieiras and the Quattrone Defendants, as well as against the BDO Defendants.

### 2.     Remaining Claims

Cross-Claim Defendant and Third-Party Defendants make procedural arguments, (see BDO Defs.' Br. at 3-5; BDO Defs.' Reply Br. at 2; Vieiras' Br. at 3-4), and merits-based arguments, (see BDO Defs.' Br. at 6-13; BDO Defs.' Reply Br. at 2-4; Quattrone Defs.' Br.; Quattrone Defs.' Reply Br. at 6-8; Vieiras' Br. at 1-2; Vieiras' Reply Br.), in support of their motions to dismiss.[7]

The BDO Defendants present two procedural arguments in support of their motion – (1) the Cocchiolas did not receive leave to file the TPCs as required by Fed. R. Civ. P. 14(a), (see BDO Defs.' Br. at 3-4); and (2) Fed. R. Civ. P. 14(a) only permits claims for contribution or indemnification, (see id. at 4; BDO Defs.' Reply Br. at 2).[8]

---

[7] The Court will only address the procedural arguments, as it need not reach the merits-based arguments in dismissing the TPCs.

[8] The BDO Defendants offer two additional arguments under the heading of "Procedural Deficiencies" – (1) the four-year statute of limitations for RICO claims has expired, (see BDO Defs.' Br. at 4-5); and (2) Robert A. Gaida, John L. Tucci, Jennifer L. Peruffo, and Donna J. Barone, the individual, as opposed to the corporate, BDO Defendants, should be dismissed because the TPCs "simply do[] not allege any facts which, even if true, exposes [sic] any of the individuals to individual liability," (see BDO Defs.' Br. at 5). Furthermore, the Vieiras argue

NOT FOR PUBLICATION

### A. Leave to File the TPCs Under Fed. R. Civ. P. 14(a)

A defendant, as a third-party plaintiff "must, by motion, obtain the court's leave if it files [a] third-party complaint more than 10 days after serving its original answer." Fed. R. Civ. P. 14(a). According to the BDO Defendants, the Cocchiolas did not receive leave of court to file the TPCs, and as a result, they should be dismissed. (See BDO Defs.' Br. at 3-4.) In response the Cocchiolas reference a series of Orders entered by Magistrate Judge Hedges setting deadlines for filing cross claims and third-party claims. (Cocchiolas' Br. at 2-3, 6.)

Magistrate Judge Hedges entered three Orders on July 31, 2006, October 6, 2006, and October 20, 2006, that are relevant to this issue. The July 31, 2006 Order states that "defendants will respond to the complaints no later than 8/25/06," although there is a carve-out for those Defendants who are also parties to criminal proceedings, providing them with a deadline to respond of "thirty (30) days following the entry of guilty pleas against them, if any, or the announcement of verdicts in the Criminal Proceedings." (Order (Nos. 208 (02-168) & 149 (02-3099)).) That Order appears to have set a deadline of August 25, 2006, for Marco Cocchiola to respond, but being a defendant in the criminal proceedings, Mark Cocchiola would have received the benefit of the carve-out.

---

that the TPCs should be dismissed because the Cocchiolas failed to properly serve them under Fed. R. Civ. P. 4(e). (Vieiras' Br. at 3-4.) With respect to the BDO Defendants' first argument, the Cocchiolas voluntarily dismissed their RICO claim after the BDO Defendants' submission of their brief. (Stipulation (Nos. 314 (02-168) & 257 (02-3099)).) With respect to the BDO Defendants' second argument and the Vieiras' argument, the Court need not address them, as it has dismissed the TPCs on other bases.

In addition, to clarify the record, the Court notes that although the BDO Defendants' reply brief states that the Cocchiolas intended to dismiss the individual BDO Defendants, (see BDO Defs.' Reply Br. at 2), the Court has yet to receive any such stipulation from the Cocchiolas.

**NOT FOR PUBLICATION**

In the October 6, 2006 Order, however, Magistrate Judge Hedges modifies the deadlines, stating that "<u>any</u> defendant wishing to assert a cross claim or third party claim may file same within 14 days of this order." (Order (Nos. 230 (02-168) & 180 (02-3099)) (emphasis added).) The October 20, 2006 Order extends the deadline for the filing of cross claims or third-party claims by the Cocchiolas until October 27, 2006. (Order (No. 234 (02-168)).) As stated above, the Cocchiolas filed the TPCs on October 27, 2006.

The Court concludes that, in this regard, the Cocchiolas satisfied pleading standards for third-party practice. Third-Party Defendants had ample opportunity to express their disapproval with the Orders at the time they were entered. The dockets reflect nothing from Third-Party Defendants in response to September 21, 2006 and October 4, 2006 letters sent by the Cocchiolas' counsel to Magistrate Judge Hedges, seeking clarification of deadlines with respect to his clients. Further, when the Cocchiolas requested an extension from October 20 to October 27, for the filing of cross claims and third-party claims, their counsel represented that "there is no objection to the extension by any parties in these matters." (Letter (Nos. 233 (02-168) & 181 (02-3099)).) Because Third-Party Defendants failed to express any objection at the time Magistrate Judge Hedges entered the Orders setting the deadline for filing cross claims and third-party claims, the Court declines to dismiss the TPCs on this ground.

    **B.  Improper Claims Under Fed. R. Civ. P. 14(a)**

Fed. R. Civ. P. 14(a) states that "[a] defending party may, as a third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." As a result, "'[a] third-party claim may be asserted under Rule 14(a) only when the third party's liability is in some way dependent on the outcome of the main claim or when the

**NOT FOR PUBLICATION**

third party is secondarily liable to defendant.'" F.D.I.C. v. Bathgate, 27 F.3d 850, 873 (3d Cir. 1994) (quoting 6 Charles A. Wright, et al., Federal Practice & Procedure § 1446). With respect to the second, fourth, and fifth causes of action of the TPCs, the liability of Third-Party Defendants is not "some way dependent on the outcome of the main claim," nor are they "secondarily liable to defendant." Because these claims are "separate [and] independent from the main action, impleader [is] denied." F.D.I.C., 27 F.3d at 873.[9] The second and fifth causes of action, as asserted against Third-Party Defendants Robert A. Gaida, John L. Tucci, Jennifer L. Peruffo, and Donna J. Barone, and the fourth and sixth causes of action, as asserted against the Quattrone Defendants and the Vieiras, as well as against Gaida, Tucci, Peruffo, and Barone, are dismissed without prejudice.

### C.    Supplemental Jurisdiction

Given the Court's procedural rulings as stated above, the only claims remaining are the second, fourth, and fifth causes of action asserted against Cross-Claim Defendant.[10] The TPCs allege the Cocchiolas' basis of subject matter jurisdiction:

> Cocchiolas' third-party claims concern the same subject matter as the underlying claims against Cocchiolas. Jurisdiction for these third-party claims is, therefore, premised on the subject matter jurisdiction asserted by the plaintiff for his underlying claims against Cocchiolas.[11]

(TPCs ¶ 1.)  According to 28 U.S.C. § 1367(a):

---

[9] The sixth cause of action is also improper under Fed. R. Civ. P. 14(a), though it is not specifically asserted against any Third-Party Defendant who has filed a motion to dismiss.

[10] As was the case with Third-Party Defendants, the sixth cause of action is not specifically asserted against Cross-Claim Defendant.

[11] The TPCs do not assert any independent basis for subject matter jurisdiction over the cross claims, so the Court assumes that despite referring only to "third-party claims," supplemental jurisdiction is the intended basis of subject matter jurisdiction over all claims.

NOT FOR PUBLICATION

> Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy.

Section 1367(c)(3) states, however, that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." Given the Court's ruling on the first, seventh, and eighth causes of action, it avails itself of § 1367(c)(3) and declines to exercise supplemental jurisdiction over the second, fourth, fifth, and sixth causes of action, as asserted against Cross-Claim Defendant.[12]

---

[12] Even liberally construing the TPCs as asserting subject matter jurisdiction over the second, fourth, and fifth causes of action against Cross-Claim Defendant under § 1332, the Court concludes that the Cocchiolas would fail to satisfy its requirements. The TPCs assert that Mark Cocchiola "resides in the State of New Jersey." (TPCs ¶ 4.) According to the TPCs, Cross-Claim Defendant is "an Illinois limited liability partnership," (id. ¶ 5), and "Gaida is a partner at BDO" that "resides in the State of New Jersey," (id. ¶ 7). In Carden v. Arkoma Associates, the Supreme Court held that "diversity jurisdiction in a suit by or against the [unincorporated association] depends on the citizenship of 'all the members,' 'the several persons composing such association,' 'each of its members.'" 494 U.S. 185, 195-96 (1990) (citations omitted). Because Gaida, a partner of Cross-Claim Defendant, resides in New Jersey and Mark Cocchiola resides in New Jersey, diversity jurisdiction is lacking. See N.J. Inst. of Tech. v. Medjet, Inc., No. 98-1429, 1998 WL 34050425, at *2 (D.N.J. Dec. 31, 1998) (dismissing complaint on basis of lack of subject matter jurisdiction because partners of limited liability partnership defendants resided in same state as plaintiff).

NOT FOR PUBLICATION

## CONCLUSION

For the foregoing reasons, the motions to dismiss are granted, dismissing the first, seventh, and eighth causes of action with prejudice and the second, fourth, fifth, and sixth causes of action without prejudice.


June 2, 2008                                                         <u>s/William H. Walls</u>
                                                                     United States Senior District Judge